We'd like to thank Judge Bouley from the Northern District of Georgia for joining us and thank you very much for being here. The first case we have on the calendar is Sherry Walker v. Life Insurance Company of North America. Counsel, are you both prepared? You may proceed. Good morning. May it please the Court, my name is Andrew Grabhorn and I represent the plaintiff appellant in this matter, Sherry Walker. I would like to reserve three minutes of rebuttal time. You may. Thank you. Thank you. This bill concerns three separate issues. The first, whether the district court erred in not allowing Ms. Walker to present her mental anguish damages to the jury. Second, whether the district court erred in granting summary judgment to defendant Appellee Lina as Ms. Walker's back-fit claim. And third, whether the district court erred in its findings related to both pre- and post-judgment interest, both as to the rates and as to the calculations. The first issue the Court is being asked to address is whether the district court erred in not allowing Ms. Walker to present her mental anguish damages to the jury. At the party's pre-trial conference, the Court orally held that Ms. Walker was not permitted to recover mental anguish damages aside from stating it was relying upon state law or case law. The lower court did not delineate which cases it was relying on for us to adequately be able to address those. Well, why doesn't the Sanford case from the Alabama Supreme Court resolve that issue adversely to you? I would, because of the later decision in both Lunsford and Pate. In Lunsford, Justice Maddox wrote a dissent in which he noted that the majority opinion was changing Alabama law. The majority was changing it to the effect of where mental anguish damages could no longer previously could not be awarded on a breach of insurance contract. The majority in Lunsford was changing that opinion. He reaffirmed that when he later, I think it was less than three months later, Justice Maddox wrote the opinion in Pate, citing to himself in his dissent in Lunsford, wherein he specifically noted that we just changed the law and implicitly modified everything before it, including the dissent in Sanford. Okay, but Sanford was a, I guess the issue that I have with that, and maybe I'm just misunderstanding Sanford, but Sanford, the way I understood it, it was a contract almost exactly like this one, and so the previous cases that you're talking about were factually distinguishable from Sanford. If we were looking at those cases and we're under the obligation to try to follow Alabama law to the best of our ability, what about the later cases, Pate, et cetera, how do they look more like this case than Sanford does, I guess is my question. Okay, I think the, let me answer you two ways first, through the old law school. Well, it depends, but anyways, I think it is important to note, kind of like we did in the reply brief, of how the law evolved post-Sanford. Post-Sanford, the court came out with the decision in LaVoy, which is overturned on specifically noted that a particularly likely risk of breaching an insurance contract is resulting in impoverishment or bankruptcy, coupled with the fact that these breaches almost always coincide with emotional vulnerability, and so on. Following LaVoy is when Lunsford came out, and in Lunsford, as I stated, Justice Maddox noted the district court, or not the district court, the Supreme Court of Alabama was overturning implicitly the earlier cases that dealt with breach of an insurance contract, so I don't know that we need to get down into the weeds of the type of insurance contract. Right, but isn't Pate, I mean, maybe I misread the particular case, but I thought that Pate was expressly predicated on, quote, the special nature of credit disability insurance, which unlike long-term disability insurance contemplates the possibility that an insured will not be able to repay a specific debt. I mean, isn't there a distinction? I think what we're getting into there more is of the, not necessarily the specific holding of the case and what it really stands for, but that's getting more into the minutiae of the dicta of the specific facts of that case, because earlier in the case, I'm quoting here, however, an independent fire insurance company, the Lunsford, this court affirmed a judgment awarding damages for mental anguish based on a breach of a contract of insurance, thus implicitly modifying the rule stated in Vincent. And then in a footnote, because this is just Justice Maddox writing it, in his footnote, he cites back to his dissent in which he again notes that Lunsford changed the law regarding the recovery of damages for mental anguish in an action for a breach of an insurance contract. So while I agree that Pate specifically dealt with a disability credit insurance, I don't think that it stands for just disability credit insurance is the only one that they're allowing mental anguish for now, rather it's all breach of an insurance contract, because going back to Lavoie. So you don't think Pate cabined the policy in question? I do not. Okay. Cabined, do you mean excluded? When we're talking disability credit insurance and disability insurance as in this case, the two are essentially synonymous. What they are, are they're protecting your ability to pay in one instance a specific bill rather or all your bills in case you become disabled. These are specifically sold to these individuals as we cited in our briefing to the websites for New York Life, who is an outliner for all intents and purposes, where they are selling a peace of mind. They're selling to protect your family. They're selling to secure your financial interest if something happens, to give you the ability to pay your mortgage, to feed your family. If that doesn't get into the mental solicitude that all these cases really at the heart say, it's hard to fathom what really does. Hopefully that answers your question. Thank you. Could you talk a little bit about the interest issue to me? First off, I guess I would say, does the standard that we would apply to determine, let's just assume that we agree that the parties can stipulate to what the post-judgment interest rate would be. It looks to me like the circuits are, I don't know, divided maybe is not the right word, but it looks like there are slightly different tests that would apply to that question is whether the parties have agreed to a different post-judgment interest rate. What do you say about that? Does that matter for your argument? I don't know that it matters so much what other circuits or states do because under the 11th Circuit precedent that we cited, the interpretation of the provision is a question of law. Obviously, we're deviating to no vote. Then under Alabama law, specifically says what the contract says is what the contract says. I think that's a fundamental issue, especially in insurance contracts where you're dealing with a contract. Well, with post-judgment interest though, you're talking about a federal question, so I guess that's my point. With respect to post-judgment interest, the 2nd Circuit I think says, correct me if I'm wrong, but the 2nd Circuit says that the parties have to be expressed in their contract to address post-judgment interest itself to agree to a different interest rate besides what the federal interest rate would be. I think maybe I'm misunderstanding, but I think there are some other courts that have said there is no special rule as to how you would interpret that contract. Does that matter? I apologize if I misunderstood. We're talking pre and post. It gets all confusing. I don't know that it necessarily matters because at the end of the day, we would contend that even if the more harder test, I guess for lack of a better phrase, of express, I think that it's specifically in here. We even cited a prior case where they're talking about, you're talking about the amount due. It comes whether it's from the month-to-month benefits, whether it comes from the court. Each month, that's where that 1.5% applies to in this case. By way of example, just because the jury found in Ms. Walker's favor, that didn't stop the policy from applying as to the impact of those benefits were still due. Until they're paid, then that 1.5% interest rate inside the policy still controls. I think you might be talking about pre-judgment interest. Talking about pre-judgment interest, the way I understood that argument was that your argument was that it should be compound interest instead of simple interest. Am I understanding that right, that that's your argument? Yes. Okay. What is the annual interest rate that you got, as simple? I believe it's 18% per annum, so 1.5% monthly. Right. The contract has written that the interest is per month on the amount of any claim that has become overdue, and it's a 1.5% interest rate per month. Why would that compound annually? How do you read that to make it compound annually? Because it's more than 1.5% because I guess you're doing it monthly, compounded monthly essentially at 1.5% because every month, it's just when you're dealing with a disability context, that monthly benefit's not due until the next month and the next month and the next month. That's how they move forward. As those move forward, it's compounding each month because it's a new payment. It's not, by way of example, like a life insurance where it's one set amount. No, it's each month, it's a new payment, so it has to be compounded. We cited the prior cases where Linus specifically said that, yeah, this is compound interest. I believe the judge, Judge Johnson, distinguished those cases by saying, I believe most of them were ERISA cases. As I'm sure you all are well aware, being in federal court, most of the time when we're dealing with long-term disability policy, we're going to hear the five little letters, E-R-I-S-A for ERISA. In those situations, though, it's indistinguishable from what we're talking about here because as their own 30B6 witness said, it doesn't matter if it's ERISA. It doesn't matter if it's a state law. We treat them all the same, which they're required to under every insurance code in the country. You can't treat one person differently than somebody else. So where Lina has conceded in other cases that it's compound interest as well as, again, we believe the language in the policy gets us there as well, I don't see any way around it. And I just, what exactly makes it, so the way I understand Alabama law on this issue is that there's a presumption in favor of simple interest. You agree with that? So what is it about this contract language that overcomes that presumption and says that it should be compound interest? And that gets into, hang on, flip into the actual language that I had here just a second ago. Hold on one second for me, Your Honor. Because we got into, and I believe it's discussed in the reply brief, dealt with the language of adjudication and overdue and hang on, let's see, I have it right here. Yeah, we were talking about where the policy discusses the terms were adjudicated, then overdue and settled. And again, each month those benefits keep adding on. They are compounding to one another as would the interest. And we again ask the 30 v. 6 witness, is this a reasonable interpretation of this policy? And he said yes. And then on top of that, we can even cite to the claims manual whether or not it was properly before the court or not. But again, line is never disputed, that's their claims manual wherein it says all this interest is compound. It flows with everything that one, as we've discussed thoroughly in our brief, on what the language says as well as the fact that line has said in its own prior briefing before other judges that it's compound, that its own claims manual says it's compound. One final question on this. I assume you know this number, but I'm not very good at math. So you got $160,000, give or take $100 or so on the actual claim. Then you got prejudgment interest of $95,000. If you were to win this compounding point, how would that $95,000 change? Do you know? It would increase, I was going to say exponentially, but a dollar is always in the eye of the beholder and I don't know the exact number right off the top of my head, which I think is what you wanted. I mean, I'll tell you it's more than $10,000 and I think it's more than $20,000. But specific down to the penny, I couldn't tell you at this minute. There's just one more thing I would like to add to that if I may because I'm out of time. You may. The only last thing I would add is, yeah, we're talking about big numbers there, $160,000. We're talking about $95,000 in interest. But again, that's all in the eye of the beholder. And two, we're talking about someone who was terminated of benefits in 2014. That's over eight years ago. That adds up. So thank you. I see I'm well over. Thank you, Your Honor. We'll let you have your remaining time for rebuttal. Thank you. Mr. Little. May I please the Court? My name is John Little. I'm here on behalf of the Appley Life Insurance Company of North America, or LINA. The District Court followed the law in this case. It followed Alabama Supreme Court precedent and authority from this Court when precluding an award of mental language damages on a claim for breach of contract. It followed Alabama law when it decided that the expert opinions that LINA relied upon to make its claim decision precluded the plaintiff from carrying her burden of proof on her bad faith claim. And it followed both Alabama and federal law when it assigned the post-judgment interest rate at the federal rate and awarded pre-judgment interest as simple interest. Now, we have, as a Court, ruled on the issue of post-judgment interest, correct? That's correct, Your Honor. But the majority of our District Courts have, and they say you follow the statute. That's right, Your Honor. And I think to follow up on Judge Brasher's point, I believe it's the second, tenth, seventh, and fifth that have all said the parties may, by agreement, select a different post-judgment interest rate. However, to answer your question, our position would be that if you're going to have the parties come up with a different rate, then the better rule for this Court to adopt would be one where the parties must do that using clear language. Some circuits have used the clear, unambiguous, and unequivocal language standard. Here, not only is there no clear language altering the post-judgment interest rate, there's no language at all. The contract does not speak to altering the post-judgment interest rate in any way. So the District Court correctly decided that the post-judgment interest rate should follow this Federal statute at Section 1961. I'd also like to follow up on the point about Pate and Lunsford. I believe that that question has already been answered by this Court in Ruiz. In Ruiz, the Court considered pretty much the same argument that Lunsford ushered in a different mental anguish standard under Alabama law, and this Court rejected that argument. Not only did it reject that argument, it also rejected the argument that any insurance policy gives rise to a proper award for mental anguish damages. And when the Court did so, it made an important point, and really a logical one, that especially applies in the insurance context. Anytime you have a contract which the parties care about, there's going to be some emotional impact if for an alleged breach of that contract. But as the Court said, that alone is not enough to change Alabama law and allow mental anguish damages to be recovered for breach of a contract. As the Court noted, the binding decision here is the Sanford decision, which addressed these exact facts and determined that mental anguish damages are not recoverable for breach of a disability policy. I think the last point to make for the Court is with respect to the bad faith claim. The District Court did not hear a library summary judgment on the bad faith claim. As we've noticed extensively in our brief, and as the District Court discussed extensively in his well-reasoned 70-page opinion, there was ample evidence in the record to support Linus' claim decision, and in light of that evidence, the jury could not have found that there was no legitimate reason for the denial. Again, the standard under Alabama law for bad faith is a very heavy burden that the plaintiff bears, and it's to prove the absence of a legitimate reason. No reasonable juror could have found the absence of a legitimate reason when in the claim decision, you're citing expert medical opinions, expert vocational opinions, and it's those opinions that are giving rise to the claim denial. Could you address the compound interest issue before you sit down? So your opposing counsel's argument is basically that the contract language says, well, it says per month, and it says on the amount due, I'm sorry, that has become overdue. Why doesn't that encompass compounding? Well, the language of the contract says on the amount of the claim, and the amount of the claim is the benefit, not interest. Compound interest is interest on interest. So contracts that would allow for an award of compound interest would need to say that they're an award of interest on interest, and that's not what this language says. This language says that there's interest due on the amount of any claim. And as we noted in our brief, I think this court has addressed an extremely close factual scenario in its recent decision in Karadime USA LLC v. Pruitt, where the court was considering Georgia law, which like Alabama, had a presumption against compound interest, and it was considering a provision that also allowed for 1.5% per month interest, and the court said in that case that it was simple interest, not compound interest. And I would submit that the court should follow the same reasoning here and affirm the district court's decision that this is a simple interest calculation for prejudgment interest. Okay. Thank you. Thank you. Ms. Walker simply can't evade settled law on mental language damages. She has no case that says that you can receive mental language for breach of a disability contract. For almost a decade, Alabama law has been very clear on bad faith claims that you have to prove the absence of a legitimate reason for the denial. The district court followed that law and made the correct termination summary judgment, and the district court also properly set the amount of interest at the federal rate for post-judgment interest and simple interest for prejudgment interest. If the court has no further questions, I'm happy to yield my time. No further questions. Thank you, Mr. Little. Thank you, Your Honors. I do want to address primarily what I just heard there. Let's start with what opposing counsel said about what this court said in Ruiz. And I think one of the things that keeps getting missed about Ruiz is Ruiz is not truly about a breach of an insurance contract. What happened in Ruiz was the plaintiff wanted insurance from this company. He was told that he got insurance company or insurance through that company, but they never actually went and got it. The argument there, it wasn't a breach of an insurance contract. It was a breach to procure an insurance contract. So I would disagree that Ruiz is spot on with this case. And even so, Pate is the controlling state law case on this issue from the Alabama Supreme Court. With all aspects of federalism and comedy, that's what this court is required to go by. And while I still continue to disagree with opposing counsel regarding Sanford, Sanford, again, is just no longer good law. That was, again, in 19, I believe, 79. And coming forward the 24-plus years later, Justice Maddox continually noted, hey, we're changing the law in Lunceford. He said in his dissent, we're changing the law. And then on his majority opinion in Pate, which was a unanimous decision that he authored, he said in Lunceford, we changed the law. Again, we have changed the law. Mental English is now available for a breach of an insurance contract. And I wanted to turn back to quickly leave Justice Lagoa had made a comment about the special nature that was mentioned in there. And the court highlighted the special nature resulting from the periodic payments involved with disability insurance, which distinguish it from lump sum benefits like health and life insurance. But all disability benefit or disability insurance, all insurance really shares the same special nature. And that's kind of what Judge Lavoie or Justice Lavoie was getting to, or Justice Torbert in Lavoie was getting to, was that that's what insurance is for, is to give us that peace of mind, is to protect our family and loved ones. I mean, we've seen everything that's happened with the hurricanes and everything. If they didn't have their homeowner's insurance, that's not a good thing because they're hoping that they're protected. That's exactly what disability benefits are there for. It's to protect you and if you cannot work, if you cannot provide for your family, and you just need that little help to be able to pay your bills, to pay your mortgage, to pay for your car insurance. In all the cases that have come after Lunsford and Sanford, or sorry, Lunsford and Pate, they don't really get to the issue of insurance contracts specifically. Most of them are dealing with breaches of warranty. They're dealing with, I believe one was dealing with a burial issue. No one has said that Pate is bad law. It's just kind of been one of those that somehow, it's like those old statutes, they just get lost into the void. But that is the Alabama controlling precedent on this point. And again, while I did note later on in the decision about the special nature of the insurance, it still said that breach of an insurance contract, Lunsford said you can get employment damages under those. And I know I'm over time. Can I briefly just say one thing on bad faith and then I'll be done? Very quickly. Thank you. I just wanted to quickly address because I didn't get to my initial, was that opposing counsel said that the lower court recognized there was ample evidence and that no reasonable juror could find for Ms. Walker. The thing is we were able to put in expert medical, expert testimony from her doctors. We were able to put in testimony from our own vocational person who was, again, an expert witness. And then we were able to point out all the fallacies that were within the things they relied upon, including the record review that actually supported her inability to do sedentary level work. If we're just going to sit there and allow an insurance company to put in whatever evidence they want and say, oh, well, it has to be true because we have it. That cannot be the standard. Ms. Walker went well above her burden of proof and established that there was at least a genuine issue of material fact. Thank you, Your Honors. Thank you for bringing it over. Thank you both for being here. Have a good day.